UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HAIJIN CHO-BRELLIS,

                Plaintiff,

                -against-

NEW YORK STATE OFFICE OF CHILDREN AND
FAMILY SERVICES, SUSAN GINTER, KAREN
SURGEARY, and EDWARD FIGUEROA (sued in
Their Individual Capacities Pursuant to New York
Executive Law § 290 *et seq*.),

                Defendants.
-------------------------------------------------------------X

**REPORT AND
<u>RECOMMENDATION</u>**

21-CV-1957 (KAM)(JMW)

**A P P EA R A N C E S:**

**Paul Carruthers, Esq.**
Scott Michael Mishkin, P.C.
One Suffolk Square
Suite 240
Islandia, NY 11749
*For Plaintiff*

**Glenne Ellen Fucci, Esq.**
**Rene Frances Hertzog, Esq.**
NYS Office of The Attorney General
28 Liberty Street
New York, NY 10005
*For Defendants*

**WICKS,** Magistrate Judge:

## I.      <u>PRELIMINARY STATEMENT</u>

       This discrimination case arises out of the unfortunate racial remarks made by students to

a teacher.  The "school" is within a state-operated juvenile residential facility for youth

offenders, juvenile delinquents, and other at-risk youth.  These remarks, made over time by the

students to Plaintiff, were claimed to have been a vocal mimicry or repetition of remarks made

by another teacher to those students.

Plaintiff commenced this action against Defendants New York State Office of Children and Family Services ("OCFS"), Susan Ginter, Karen Surgeary and Edward Figueroa for alleged violations of Title VII, 42 U.S.C. §§ 2000e-2000e-17 and New York State Human Rights Law, N.Y. Exec. Law § 290 et seq ("NYSHRL"), due to alleged discrimination against Plaintiff based on her race and national origin, and for retaliation for engaging in protected activity. Specifically, Plaintiff alleges that while she was a teacher at OCFS she was subjected to discrimination, a hostile work environment, and, after making several complaints, Defendants retaliated against her, ultimately resulting in her constructive termination.

Defendants argue here that dismissal is warranted because certain claims of discrimination and retaliation are time-barred, and that Plaintiff's claims also fail on the merits because Plaintiff fails to plausibly allege that any decisionmaker harbored discriminatory animus towards her, that she suffered any adverse employment action, or that the perceived discrimination was sufficiently severe or pervasive. (DE 30 at 10-12.) Further, Defendants argue that Plaintiff's Amended Complaint should be dismissed for failure to plausibly allege that Plaintiff suffered any materially adverse change in her working conditions or that there was a causal connection between a protected activity and the alleged adverse employment actions. (*Id.*) Defendants also assert that claims against the individual Defendants should be dismissed for failure to allege facts sufficient to infer aiding and abetting any unlaw conduct of OCFS, and because the Eleventh Amendment bars OCFS from being sued in federal court. (*Id.*)

Before the Court on referral from the Honorable Kiyo A. Matsumoto is Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (DE 29; DE 30; DE 31.) For the reasons that follow, the undersigned respectfully recommends that the

motion to dismiss be GRANTED in part and DENIED in part.

## II.    FACTUAL BACKGROUND

The facts are drawn from Plaintiff's Amended Complaint ("Complaint") (DE 24) and are presumed true for purposes of this Report and Recommendation.

### *The Parties*

Defendant OCFS is a New York State agency that operates juvenile residential facilities statewide for youth offenders, juvenile delinquents, and other at-risk youth.  (DE 24 ¶ 5.) Plaintiff is a Korean-American female who began working as a teacher for OCFS in Dix Hills, Long Island on May 31, 2018.  (*Id.* ¶¶ 3, 25.)  She taught Math, Science, Earth Science, Careers Finances and Management, and Chemistry.  (*Id.* ¶ 25.)  Defendant Ginter was the OCFS Educational Coordinator and Plaintiff's immediate supervisor, and had authority to assist in hiring, firing, and disciplining of employees at OCFS.  (*Id.* ¶¶ 6-7.)  Defendant Surgeary also worked as a teacher at OCFS and Defendant Figueroa was the OCFS Facility Director and Plaintiff's second-level supervisor.  (*Id.* ¶¶ 13, 18.)

### *The Remarks from Plaintiff's Students: December of 2018 – February of 2019*

The students began making hurtful racial remarks to Plaintiff in December 2018.  In December of 2018, Plaintiff's students asked her if she eats dog meat.  (*Id.* ¶¶ 27-28.)  After Plaintiff told her students that she did not eat dog meat and that she in fact had a dog and two cats, Plaintiff's students continued to ask her if Chinese people eat dog meat.  (*Id.* ¶¶ 28-29.) Plaintiff again told her students that neither Chinese nor other Asian people eat dog meat.  (*Id.* ¶ 30.)  Plaintiff's students then told her that another teacher, Surgeary, told them Chinese people eat dog meat.  (*Id.* ¶31.)  When Plaintiff thereafter confronted Surgeary, Surgeary admitted she believed Asian people ate dog meat and stated that she did tell her students this during a

classroom discussion.  (*Id.* ¶¶ 33-36.)  Surgeary then said to Plaintiff, "What do you care? You are a Korean not Chinese."  (*Id.* ¶ 37.)  Plaintiff asked Surgeary to stop telling students that Asians, including Plaintiff, eat dog meat.  (*Id.* ¶ 38.)

The next month, in January 2019, the students asked Plaintiff if her mother bound her feet when she was little, and asked why her feet were so small.  (*Id.* ¶ 39.)  When Plaintiff asked Surgeary if she knew why her students, and staff members,[1] asked about her feet being bound, Surgeary said she was teaching Ancient Chinese culture and her students were "so stupid that they did not know the difference between Chinese and Korean people."  (*Id.* ¶ 41.)  Then, toward the end of January 2019, Plaintiff's students and OCFS staff members whom Plaintiff does not identify by name, asked Plaintiff if Chinese restaurants use cat meat instead of chicken meat as Surgeary had told them.  (*Id.* ¶ 42.)

In February of 2019 Plaintiff complained to Ginter about Surgeary's comments and asked Ginter to speak to Surgeary because she felt very uncomfortable and that the workplace was hostile.  (*Id.* ¶¶ 43-45.)  This was the first complaint Plaintiff made to a superior and although Plaintiff states she "formally" complained, she does not specify whether she made the complaint orally or in writing, or what procedure she went through to file such a "formal" complaint, if any. Ginter advised she would speak with Surgeary and told Plaintiff that she would need to contact "Albany" even if Plaintiff did not intend to press charges herself.  (*Id.* ¶¶ 47-49.)  No further statements are alleged to have been made until 7 months later.

***The Fall of 2019***

On September 19, 2019, Surgeary went to Plaintiff's classroom and told Plaintiff that the Special Education teacher, Ayala, was driving her crazy because of her Hispanic accent,

---

[1] This is the first time in the Amended Complaint that Plaintiff mentions staff members making remarks.  The allegations do not specify any staff members making such remarks to her.

mimicking Ayala's accent.  (*Id.* ¶ 51.)  Plaintiff felt uncomfortable and told Surgeary that

everyone has an accent, including herself, and Surgeary told Plaintiff that she never noticed

Plaintiff's accent.  (*Id.* ¶ 52.)

At an unspecified time in mid-September of 2019, Ginter left Plaintiff a note with the

contact information for an investigator from Albany, Dave Martin.  (*Id.* ¶ 54.)  Later that day,

Ginter told Plaintiff that she had already spoken with Martin and told him not to make an issue

because it was the students asking the questions, not the adults.  (*Id.* ¶ 55.)  Plaintiff told Ginter it

was not only the students, but also OCFS's staff members.  (*Id.* ¶ 56.)  Ginter then directed

Plaintiff not to tell Surgeary about their conversation.  (*Id.* ¶ 57.)  Plaintiff then told Martin that

she did not want the matter to go any further, claiming she feared she would face retaliation if

she filed a formal complaint.  (*Id.* ¶¶ 58-59.)  Plaintiff does not specify when she spoke with

Martin.

Plaintiff further alleges that on three more occasions that fall – October 30, 2010,

November 8, 2019, and November 12, 2019 – Surgeary made remarks about another Asian

OCFS teacher regarding his accent, tone, and teaching style.  (*Id.* ¶ 53.)  Plaintiff does not allege

who Surgeary made the remarks to or whether anyone else was present when the remarks were

made.  Nor does Plaintiff allege that she ever specifically complained about these remarks.

***The Complaint and Subsequent Reviews: Late-Spring of 2020 – Fall of 2020***

In mid-May of 2020, Plaintiff filed a formal complaint of discrimination due to her

Ethnicity, Race and National Origin with the Governor's Office of Employee Relations Anti-

Discrimination Investigations Division ("GOER").  (*Id.* ¶ 60.)  One month later, on June 26,

2020, Plaintiff received an unsatisfactory year-end evaluation, although she was never told

during the school year that her performance was subpar.  (*Id.* ¶ 61.)  In fact, Ginter had actually

complimented Plaintiff as to her teaching performance and classroom management. (*Id.* ¶ 62.)

No other teacher received a review from Ginter at that time. (*Id.* ¶ 63.) And, Ginter was not

qualified to evaluate teachers without a supervisory educational certificate according to Plaintiff.

(*Id.* ¶ 63.) Plaintiff claims that by evaluating her, Ginter violated Governor Cuomo's Executive

Order which prohibited teacher evaluations in 2020 due to COVID 19,[2] and that Ginter

fabricated Plaintiff's performance evaluation to be "unsatisfactory". (*Id.* ¶¶ 64-65.) Plaintiff

contested the rating which rating was later changed to "satisfactory". (*Id.* ¶ 66.)

 Plaintiff alleges she developed anxiety and depression and could not teach summer

school, and that Ginter spread rumors that Plaintiff would not be returning to OCFS (*Id.* ¶¶ 67-

69.) On August 10, 2020, OCFS reassigned Plaintiff's Career Finances and Management class

to another teacher. (*Id.* ¶ 70.) Plaintiff asked Figueroa why her class was re-assigned, but

Plaintiff claims he did not provide her with a "legitimate business reason." (*Id.* ¶ 71.)

 Based on her doctor's recommendation, Plaintiff then took FMLA leave from September

2020 through December 2020 while she continued to undergo treatment for anxiety and

depression. (*Id.* ¶¶ 73-74.) After her FMLA leave, Plaintiff chose not to return to work because

she was still suffering from anxiety and depression. (*Id.* ¶ 75.)

### III. RELEVANT PROCEDURAL HISTORY

 Plaintiff filed a complaint with the New York State Division of Human Rights on July 1,

---

[2] Defendants note that the Executive Order No. 202.39 did not *prohibit* evaluation of teachers during COVID-19 as Plaintiff alleges, but instead waived the requirement for public schools to complete annual performance evaluations to the extent necessary without funds being withheld. (DE 30 at 25 (citing Executive Order No. 202.39, signed June 7, 2020, available at https://www.governor.ny.gov/sites/default/files/atoms/files/EO_202_39.pdf.) The Court notes that Defendant is correct. The Order, in part, temporarily suspended/modified Section 3012(d) of the Education Law and Subpart 30-3 of Title 8 of the NYCRR, "to the extent necessary to exempt school districts from completing annual professional performance reviews of classroom teachers . . . during the 2019-20 school year without withholding any apportionment of funds for the general support of public schools for which a school district is otherwise entitled . . ."

2020, charging OCFS with unlawful discrimination, and received a right to sue letter from the EEOC on January 13, 2021.[3]  (DE 31-1; DE 24 ¶ 4.)

Plaintiff commenced this action on April 12, 2021, asserting eight causes of action, claiming violations of Title VII by OCFS for race and national original discrimination (first and second causes of action), retaliation (fifth cause of action), and a hostile work environment (seventh cause of action), and violations of NYSHRL by the individual Defendants also for race and national origin discrimination (third and fourth causes of action), retaliation (sixth cause of action), and a hostile work environment (eighth cause of action).  (DE 1.)  On July 21, 2021, Defendants filed a pre-motion conference request regarding their anticipated motion to dismiss, based on claims being time-barred, Plaintiff's failure to allege an adverse employment action, failure to allege that the discrimination was severe or pervasive, failure to allege that she suffered a materially adverse change in working conditions, or that there was any causal connection between a protected activity and alleged adverse employment action, and that the claims against the individual Defendants were barred as OCFS is immune from suit under NYSHRL.  (DE 21 at 2-3.)  The Honorable Kiyo A. Matsumoto granted Defendants' request (Electronic Order dated July 26, 2021) and held a Pre-Motion Conference on August 3, 2021, during which Plaintiff was directed to file an Amended Complaint by September 3, 2021, and Defendants were directed to file a letter thereafter advising whether they intended to proceed with motion practice. (Electronic Order dated Aug. 3, 2021.)  Plaintiff filed an Amended Complaint on September 3, 2021 (DE 24) and Defendants filed a letter on September 13, 2021, advising that they intended to

---

[3] A Court may take judicial notice of EEOC charges, including notices of charge and right-to-sue notices as they are public records. *Murtha v. N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *15 (S.D.N.Y. Sep. 17, 2019).  Courts may also incorporate EEOC charges that are expressly referred to in a pleading as incorporated by reference, and consider the charges when deciding a motion to dismiss. *Id.*

proceed with moving to dismiss the Amended Complaint.  (DE 25 at 1.)  The fully briefed

motion to dismiss was filed on December 6, 2021 (DE 29; DE 30; DE 31; DE 33: DE 34), which

has been referred to the undersigned to issue a report and recommendation.  (Electronic Order

dated Apr. 4, 2022.)

## IV.    LEGAL STANDARD UNDER RULE 12(b)(6)

When considering a motion to dismiss, the Court must assume all well-pleaded facts to be

true, "drawing all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012).  However, this tenet does not apply to legal conclusions or

"threadbare recitals of a cause of action's elements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663

(2009).  The Court uses a two-pronged approach to analyze the sufficiency of the pleadings in

which District courts are to first "identify[ ] allegations that, because they are no more than

conclusions, are not entitled to the assumption of truth."  *Id.* at 664.  "Though legal conclusions

can provide the framework of a complaint, they must be supported by factual allegations."  *Id.*

Second, if a complaint contains "well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged.  The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 556-57 (2007) (internal citations omitted)).  "[T]he pleading standard [under] Rule

8  . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Iqbal* at 678 (citing *Twombly* at 555).  "[L]egal conclusions masquerading as factual conclusions

will not suffice to [defeat] a motion to dismiss."  *Garcia v. Paylock*, No. 13-cv-2868 (KAM),

2014 WL 298593, at *4 (E.D.N.Y. Jan. 28, 2014) (latter alteration in original) (citation omitted).

In discrimination cases, "the Second Circuit has noted that heightened fact pleading of specifics are not required." *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 406 (E.D.N.Y. 2013). The only requirement is that there be 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Arista Records LLC v. Doe*, 604 F.3d 100, 120 (2d Cir. 2010) (quoting *Twombly* at 570)); *see also Davis v. N.Y.C. Dept. of Educ.*, No. 10-cv-3812 (KAM)(LB), 2012 WL 139255, at *4 (E.D.N.Y. Jan. 18, 2012) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002) (noting that the "Federal Rules do not contain a heightened pleading standard for employment discrimination suits"). To state a claim, the complaint must only include a "short and plain statement of the claim showing that the pleader is entitled to relief." *LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 401 (S.D.N.Y. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). On a motion to dismiss, the issue centers on whether the claimant is entitled to offer evidence to support her claims, rather than whether plaintiff will ultimately prevail. *De La Pena*, 953 F. Supp. 2d at 406 (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001).

## V.    DISCUSSION

The Court considers each of Defendants' arguments in the order set forth below:

- Whether certain claims are time-barred (*see* § V.A. *infra*).

- Whether Plaintiff states a plausible claim for discrimination under Title VII (*see* § V.B. *infra*).

- Whether Plaintiff states a plausible claim for discrimination under NYSHRL against the individual Defendants (*see* § V.C. *infra*).

- Whether Plaintiff states a plausible claim for a hostile work environment under Title VII (*see* § V.D. *infra*).

- Whether Plaintiff states a plausible claim for a hostile work environment under NYSHRL against the individual Defendants (*see* § V.E. *infra*).

- Whether Plaintiff states a plausible claim for retaliation under Title VII (*see* § V.F. *infra*).

- Whether Plaintiff states a plausible claim for retaliation under NYSHRL against the individual Defendants (*see* § V.G. *infra*).

- Whether Plaintiff states a plausible claim for constructive discharge under Title VII (*see* § V.H. *infra*).

- Whether Plaintiff's requested injunctive relief and punitive damages should be dismissed (*see* § VI. *infra*).

**A. Whether Certain Claims are Time Barred**

Defendants argue that any Title VII discrimination or retaliation claim based on acts alleged to have taken place before September 5, 2019 (300 days prior to July 1, 2020, when Plaintiff filed her complaint with DHS), should be time-barred and dismissed.[4]  (DE 30 at 8.) Specifically, Defendant argues that the following claims for race and national original discrimination are time barred: the December 2018 remarks, the January 2019 remarks, and the January 2019 remarks from Plaintiff's students and OCFS staff members.  (*Id.*)  Defendants further argue that Plaintiff's retaliation claims are time-barred because the alleged protected activities that Plaintiff complained about to Ginter in February of 2019 and to Surgeary at some time after January of 2019, are all based on conduct that occurred prior to September 5, 2019. (*Id.* at 8-9.)

Plaintiff in turn argues that the claims which fall outside of the 300-day statute of limitations are not time-barred because they fall under the continuing violation exception.  (DE 32 at 3-4.)  Plaintiff reiterates the list of alleged discriminatory acts that took place before and

---

[4] Defendants do not argue that Plaintiff's hostile work environment claims are untimely, and such an argument would be improper anyway.  *See Zagerson v. N.Y.C. Dept. of Educ.*, 20 Civ. 11055 (KPF), 2022 WL 292917, at *13 n.18 (S.D.N.Y. Jan. 31, 2022) (noting that pursuant to the continuing violations doctrine, a hostile work environment claim is treated as a continuing violation where the claim consists of a series of separate acts that collectively constitute one unlawful employment practice, and since plaintiff's termination fell within the applicable limitation period, his hostile work environment claim was timely) (citations omitted).

after September 5, 2019 (*see* DE 32 at 4-6), and Plaintiff points to her Amended EEOC charge dated July 1, 2020, where she stated that her claim was a continuing violation doctrine charge of discrimination and retaliation.  (*Id.* at 4 citing DE 33 at Ex. B.)  The charge references the same incidents as Plaintiff's Amended Complaint.  (DE 33 at Ex. B.)  Therefore, Plaintiff asserts that Defendants subjected her to a continuous practice of discrimination.  (DE 32 at 6-7.)

An individual who intends to bring a Title VII suit in federal court must first present a complaint to the Equal Opportunity Employment Commission ("EEOC") or the equivalent state agency.  *Williams v. NY.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5 (2000)).  "[T]he claimant must make the EEOC filing within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a "Notice of Right to Sue" letter from the EEOC."  *Id.*  (citations omitted).

Evidence of a continuing violation, however, may toll the 300-day period.  *Carrasco v. N.Y.C. Off-Track Betting Corp.*, 858 F. Supp. 28, 31 (S.D.N.Y. 1994).  "The continuing violation doctrine applies where discriminatory acts [are] committed under an ongoing policy of discrimination."  *See Barkley v. City of N.Y.*, No. 12-CV-2159, 2014 WL 25270, at *11 (E.D.N.Y. Jan. 2, 2014) (internal quotation marks and citation omitted).  However, because, "[t]his doctrine is disfavored in the Second Circuit and only applies in the most compelling circumstances[,] . . . [f]or the continuing violation doctrine to apply, the initial charge filed with the EEOC must clearly allege a continuing violation."  *Id.*  (internal quotation marks and citations omitted).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made[.]"  *Fitzgerald v. Henderson*, 251 F.3d 345, 359-360 (2d Cir. 2001) (internal quotations and citation omitted).  The continuing violation toll may be applied when

there are "specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." *Id.* at 362. However, multiple incidents of discrimination, even if similar, do not necessarily amount to a continuing violation if they are not the result of a discriminatory policy or mechanics. *Atkinson v. Singh*, 19-CV-3779 (VS), 2022 WL 137634, at *6 (S.D.N.Y Jan. 14, 2022) (citations omitted). To rely on a continuing violation theory of timeliness, a plaintiff must plead a continuing violation in both the EEOC filing and the complaint. *Id.*

Here, Plaintiff received a right-to-sue letter from the EEOC on January 13, 2021. (DE 24 ¶ 4.) Although Plaintiff's Complaint does not allege the date she filed a complaint, the EEOC letter itself[5] (DE 31-1) shows that Plaintiff filed a complaint with the New York State Division of Human Rights on July 1, 2020. Therefore, to be timely, any Title VII discrimination and retaliation claims must be alleged to have occurred after September 5, 2019 (300 days prior to July 1, 2020).[6] Although Plaintiff pled a continuing violation in both the EEOC filing and the complaint, the three incidents spanning from December 2018 through January of 2019 do not fall within the continuing violation exception. The gap between January of 2019 to the other alleged instances of discrimination in September of 2019 does not evidence or otherwise show a

---

[5] EEOC charges, including notices of charge and right-to-sue letters are public records and thus, the Court may take judicial notice of the EEOC charges. *Murtha v. N.Y. State Gaming Comm'n*, No. 17 CV 10040 (NSR), 2019 WL 4450687, at *15 (S.D.N.Y. Sept. 17, 2019) (citation omitted.) EEOC charges that are expressly referred to in a pleading may also be incorporated by reference and considered when deciding a motion to dismiss. *Id.* at *16.

[6] Plaintiff filed the charge with the DHR rather than directly with the EEOC, but this does not alter the statutory timeframe. *See Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 559 n.6 (E.D.N.Y. 2006) (finding that a discrimination charge filed with the EEOC or DHR is deemed constructively filed with the other agency on that same date); *see also Mudholkar v. Univ. of Rochester*, 261 F. App'x. 320, 323 (2d Cir. 2008) ("Filing the federal claim through the agent (DHR) rather than directly with the EEOC does not change the statutory requirement that the claims be filed within 300 days.").

discriminatory policy or practice, especially in light of the fact that Ginter responded to Plaintiff's concerns and provided Plaintiff with investigator Martin's information. *Perard v. Jamaica Hosp. Med. Ctr.*, No. 18-CV-6661, 2020 WL 5633153, at *9-10 (E.D.N.Y Sep. 20, 2020) (finding that continuing violation did not apply where plaintiff did not show connection between her alleged treatment and a company policy/practice, nor that defendant permitted incidents to go unremedied); *compare to Fitzgerald*, 251 F.3d 345, 362-63 (finding continuing violation applied where Plaintiff alleged that employer berated her about hours and productivity, attempted to force her to work overtime, criticized her when she worked overtime, treated her more harshly then male employees and female employees whom he had sexual relationships with, which occurred "day to day," with no interruption during a 2.5 year period).  Accordingly, the undersigned respectfully recommends that Plaintiff's claims for race and national origin discrimination based on the December 2018-January 2019 remarks be dismissed as time-barred.[7]

The undersigned now considers the other arguments advanced on the motion seeking dismissal.  In the instance that the Honorable Kiyo A. Matsumoto does not adopt the above recommendation, for purposes of this Report and Recommendation, the remarks that the undersigned has recommended to be dismissed as time-barred are also discussed below.

---

[7] Defendants further argue that the 300-day time bar also applies to Title VII claims of retaliation and that accordingly, any retaliation claims based on conduct that occurred after Plaintiff complained to Ginter in February of 2019 and before September 5, 2019, should be dismissed.  Although the Amended Complaint does not specify acts of retaliation between Plaintiff's February 2019 Complaint through September 5, 2019, the Court finds that any such claim would likewise be time barred and thus, respectfully recommends that Plaintiff's claims for retaliation based on conduct that occurred prior to September 5, 2019 be dismissed as time-barred.  *See Perard*, 2020 WL 5633153, at *9 (citing in part *Rowe v. N.Y. State Dep't of Tax. & Fin.*, 786 F. App'x. 302, 304 (2d Cir. 2019) (finding that multiple alleged failures to promote were "a series of discrete acts of retaliation and discrimination" that were time-barred)).  *See also Williams*, 458 F.3d 67, 69-70 (affirming district court's dismissal of two instances of retaliatory conduct alleged because they were more than 300 days distant from the EEOC filing).

**B.  Whether Plaintiff States a Plausible Claim for Discrimination under Title VII**

"Title VII prohibits an employer from discriminating against any individual with respect to 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.'" *Haggood v. Rubin & Rothman, LLC*, No. 14-cv-34L (SJF)(AKT), 2014 WL 6473527, at *7 (E.D.N.Y. Nov. 17, 2014) (citing 42 U.S.C. § 2000e-2(a)(1)). "The NYSHRL mirrors these federal obligations." *Id.* (citation omitted).  Employment discrimination cases brought under Title VII - where a plaintiff alleges disparate treatment without direct evidence of discrimination - are analyzed under the *McDonnell Douglas* three-stage, burden shifting framework. *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 82-83 (2d Cir. 2015) (citation omitted).  A plaintiff establishes a *prima facie* discrimination case by showing that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id.* (citations omitted).  The defendant-employer then has the burden to show a legitimate, nondiscriminatory reason for the disparate treatment, and if articulated, the burden shifts back to plaintiff to show the employer's reason was pretext for discrimination. *Id.*  "The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 401 (S.D.N.Y. 2013) (internal quotation and citation omitted).  Indeed, "the Second Circuit has reiterated that the *Swierkieqicz* standard [that the prima facie case set forth under *McDonnell Douglas* is an evidentiary standard and not a pleading requirement] continues to exist within the *Iqbal-Twombly* framework and is the standard to be used" to analyze whether a plausible discrimination claim is stated. *De La Pena*, 953 F. Supp. 2d at 406.

14

To defeat a motion to dismiss in a Title VII discrimination case, a plaintiff must plausibly allege that the employer took adverse action against her and that her protected class was a motivating factor in the employment decision.[8]  *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  Plaintiff may do so by alleging "facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Id*.  An inference of discrimination can arise from the sequence of events that led to the employee's discharge. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015).  Adverse employment actions include discharge, refusal to hire or promote, demotion, pay reduction, and reprimand.  *Lovejoy- Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (citation omitted).  Other "[e]xamples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Abada v. Delta Air Lines, Inc.*, 2020 WL 7481326, at *3 (E.D.N.Y. Dec. 18, 2020) (citations omitted).  Lesser actions such as negative evaluation letters, reduction of class preparation periods, and transfer from library to classroom teaching have also been considered adverse actions.  *Lovejoy*, 263 F.3d at 223. (citation omitted.)

"[T]he evidence necessary to satisfy the initial burden of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is minimal."  *Littlejohn*, 795 F.3d at 313 (internal quotations and citation omitted).  "An inference of discrimination can be drawn from circumstances including actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus or preferential treatment given to employees outside the protected class[,]".  *Salas v. NY.C. Dept. of*

---

[8] There is not dispute as to whether Plaintiff was member of a protected class or that she was qualified for her position.

*Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (alteration in original) (internal quotation marks and citation omitted). Courts consider the following factors when analyzing whether a comment is probative of discriminatory animus or a mere stray remark: "(1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark . . . ; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (citation omitted).

Defendant argues that Plaintiff fails to allege facts that give rise to a plausible inference of discrimination on the part of her employer because the Amended Complaint does not assert that a decisionmaker made any of the remarks about Plaintiff's race or national origin. (DE 30 at 10.) Plaintiff rebuts that she complained to her supervisor, Ginter, about Surgeary's comments, and OCFS allowed the discrimination to continue. (DE 32 at 9.) Defendant further argues that Plaintiff fails to allege that she suffered a materially adverse change in her employment as a result of the alleged discrimination. (DE 30 at 11-13.) Plaintiff argues that she was subjected to adverse employment actions because the discriminatory remarks made her feel uncomfortable and as if she was in a hostile working environment. (DE 32 at 9-11.)

Here, Plaintiff alleges that on June 26, 2020, Ginter gave her an unsatisfactory year-end evaluation and that she suffered a materially adverse change in the terms of her employment on August 10, 2020 when her Career Finances and Management class was re-assigned to another teacher, and that Figueroa did not provide her with a legitimate business reason as to why. (DE 24 ¶¶ 61, 70-71.) The Court finds that such circumstances, *i.e.*, a negative evaluation about 1.5 months prior to taking away one of Plaintiff's class assignments, give rise to an adverse employment action. *See Davis v. N.Y.C. Dept. of Educ.*, No. 10-cv-3812 (KAM)(LB), 2012 WL

139255, at *6 (Jan. 18, 2012) ("[W]here a negative performance evaluation results in an adverse change in work conditions, it may be considered an adverse employment action.") (citations omitted); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) ("An adverse employment action may or may not entail economic loss, but there must be a link between the discrimination and some tangible job benefits such as compensation, terms, conditions or privileges of employment"); *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 217 (E.D.N.Y. 2014) (finding that negative evaluations can be considered adverse employment actions when they give rise to material adverse changes in work conditions); *Diaz v. Poly Prep Day School*, 21-cv-06611 (BMC), 2022 WL 2803259, at *5 (E.D.N.Y. July 18, 2022) (finding that demotion, compensation being altered, or responsibilities materially or significantly changing are considered altering the terms and conditions of employment).[9]

However, whether Plaintiff sufficiently pleads that the alleged adverse action was due to discriminatory animus is more problematic to Plaintiff's claim. The alleged discrimination leading up to the purported adverse action centers on remarks made in December of 2018 and January of 2019, made by Plaintiff's students and staff, not decisionmakers. Moreover, the alleged comments Surgeary made in September 2019 about a teacher's Hispanic accent, and the November 2019 remarks about another OCFS Asian teacher, were also clearly not made by a decisionmaker. Rather, Surgeary was another teacher at OCFS. Plaintiff does not allege who made the decision to take her class away from her and does not allege that Figueroa was ever made aware of any of Plaintiff's allegations. Thus, Plaintiff has not plausibly alleged an inference of discrimination by her employer as there is a missing link between the alleged

---

[9] Plaintiff's allegation that Ginter began spreading rumors that Plaintiff would not be returning to teach at OCFS, which is pled in this same section of the Amended Complaint at ¶69, is vague as that allegation does not assert when the comments were made, how often, and/or who they were made to.

animus and the adverse action taken against plaintiff.  *See Abada*, 2020 WL 7481326, at *4 (finding that although employees' derogatory remarks were disturbing and appeared to "reflect a significant animus on the part of certain . . . employees[,]" plaintiff failed to allege that the specific employees were the individuals involved in the termination of plaintiffs) (collecting cases finding that comments by individuals not involved in making adverse employment decision do not establish an inference of discrimination); *Yan v. Ziba Mode Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *4 (S.D.N.Y. Mar. 29, 2016) (finding that allegation that plaintiff's co-workers made critical comments regarding his accent failed to raise inference of discriminatory motivation where remarks were not made by supervisors or decision-makers, there was no allegation that supervisors knew about the unspecified statements, and there were no details regarding the context in which the remarks were made and whether they related to Plaintiff's termination); *Salas*, 298 F. Supp. 3d 676, 687 (dismissing discrimination claims where plaintiff did not allege her supervisors or other management made statements about her protected classes, or that those characteristics played a role in decisions to give her a warning or denial of a pay raise); *Luka*, 263 F. Supp. 3d at 487 (finding that comments made by supervisor rather than the ultimate decisionmaker did not give rise to an inference of disability-based discrimination, and even if they were made by decisionmaker, the alleged remark was not made close in time to the alleged adverse action (3-year gap), nor in relation to the specified employment decision challenged).  Moreover, the gap between the alleged discriminatory remarks (December 2018/January 2019 remarks or the Fall 2019 comments) is too attenuated from the adverse actions (June 2020/August 2020), for discriminatory intent to be reasonably inferred.  *See Moore v. Verizon*, No. 13-cv-6467 (RJS), 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (alleged remarks made by employee who was not supervisor, and which occurred at least months before

plaintiff's suspension and nearly a year prior to her termination were non-actionable stray remarks); *Haggood*, 2014 WL 6473527, at *11 (holding that discriminatory intent could not be reasonably inferred where the challenged comments were racially offensive, but the amended complaint alleged only that two of plaintiff's co-workers (not decision-making employees) uttered the comments on four occasions over a 33-month period, ending more than 1 year prior to the alleged adverse action taken against her).

Accordingly, the undersigned respectfully recommends that the portion of Defendants' motion seeking dismissal of Plaintiff's Title VII discrimination claim be granted.

## C. Whether Plaintiff Alleges a Plausible Claim for Discrimination Against the Individual Defendants

Title VII does not provide for individual personal lability, however, under NYSHRL, individuals may be liable as aiders and abettors if liability is first established as to the employer/principal. *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) (citation omitted); *see also* N.Y. Exec. Law §296(1), (6). "A precondition to a valid aiding and abetting claim under the NYSHRL . . . is a demonstration of a valid primary claim for discrimination or retaliation." *Sanchez v. L'Oreal USA, Inc.*, 21-CV-3229, 2022 WL 1556402, at *5 (S.D.N.Y. May 17, 2022). (citations omitted).

Per the Eleventh Amendment, states are immune from suits in federal court brought by their own citizens "and such immunity extends to officers acting on behalf of the State." *Morrone v. CSC Holdings Corp.*, 404 F. Supp. 2d 450, 453 (E.D.N.Y. 2005); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 384, 406 (E.D.N.Y. 2010) (finding that such immunity extends to state agencies). State law claims may be barred on sovereign immunity grounds if New York does not waive its Eleventh Amendment immunity for NYSHRL suits in federal courts. *Garcia v. Paylock*, No. 13-cv-2868 (KAM), 2014 WL 298593, at *2 (E.D.N.Y. Jan. 28, 2014) ("A state

19

and its agencies may be sued in federal court only if Congress abrogates the state's immunity or the state waives its immunity."); *Widomski v. State Univ. of N.Y. (SUNY) at Orange*, 933 F. Supp. 2d 534, 544 n.16 (S.D.N.Y. 2013), *aff'd*, 748 F.3d 471 (2d Cir. 2014).

Defendants argue that the individual Defendants cannot be responsible for aiding and abetting a violation by OCFS because Plaintiff failed to plead a plausible allegation of discrimination against OCFS in the first place.  (DE 30 at 13.)  Defendants further assert that OCFS is immune from liability under NYSHRL pursuant to the Eleventh Amendment.  (*Id.* at 13-14.)  Plaintiff merely argues that she has sufficiently alleged individual liability because Ginter, Surgeary, and Figueroa participated in the conduct giving rise to her claims.  (DE 32 at 11.)

Here, as discussed in Section V.B., Plaintiff has not adequately pled a cause of action for discrimination by OCFS.  Additionally, based on the State's immunity under the Eleventh Amendment, the NYSHRL claims against OCFS are indeed barred in federal court. Thus, the Court finds that Plaintiff fails to state a claim against the individual Defendants as aiders and abettors.  *See Farmer v. Shake Shack Enter., LLC*, 473 F. Supp. 3d 309, 338 (S.D.N.Y. 2020*)* (holding that failure to state a claim for discrimination on the part of any defendant precluded claim for aiding and abetting liability with respect to these claims); *see also Soloviev*, 104 F. Supp. 3d at 253 (finding that Plaintiffs could not state a claim against individual CUNY Defendants as aiders and abettors because Plaintiff could not state a claim against CUNY under NYSRHL as such claims are barred by the Eleventh Amendment).

Accordingly, the undersigned respectfully recommends that Plaintiff's claims against the individual Defendants for discrimination under NYSHRL be dismissed.

**D. Whether Plaintiff Plausibly Alleges a Hostile Work Environment Claim Under Title VII**

"To establish a hostile work environment under Title VII, a plaintiff must show that her workplace was permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Liang v. Cafe Spice SB, Inc.*, 911 F. Supp. 2d 184, 208 (E.D.N.Y. 2012) (internal quotation marks and citations omitted). A reasonable person must find the work environment to be hostile and the plaintiff must also subjectively perceive so. *Id.* (citation omitted). Considerations for determining whether a reasonable person would find the work environment to be hostile include frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's performance at work. *Mormol v. Costco. Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir. 2004) (citations omitted). "Although a single act can meet this threshold if it transforms a plaintiff's workplace, "[i]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Moore*, 2016 WL 825001, at *11 (alteration in original) (internal quotation marks and citation omitted). "General rude behavior is insufficient to demonstrate a hostile work environment." *Id.* The focus is on the nature of the workplace environment as a whole, and "a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (citations omitted).

Defendants do not dispute that Plaintiff has alleged a subjectively hostile or abusive work environment. Defendants instead argue that Plaintiffs' students' comments and the comments about other OCFS teachers fail to plausibly allege severe and pervasive discrimination for a

hostile work environment claim. (DE 30 at 16.) Defendants point out that Plaintiff confronted

Surgeary about the students' remarks and Surgeary stated that the topics were discussed in her

classroom, and after Plaintiff asked Surgeary to stop providing the students inaccurate

information, there were no further instances alleged. (*Id.* at 16.) Defendants further argue that

the four occasions in Fall of 2019 when Surgeary made comments about Hispanic and Asian

OCFS teachers, were isolated instances that amount to "petty slights." (*Id.*) Defendants also

argue that even if Plaintiff had encountered a hostile work environment, she fails to identify any

basis to impute the hostile work environment to her employer. (*Id.* at 17.) Plaintiff argues that

after she was subjected to discriminatory remarks, she complained to Ginter and then remedial

action was taken and discrimination was allowed to continue, and then she was retaliated against

with a negative review. (DE 32 at 12-13.) Although the subjective component is not disputed,

Plaintiff further asserts in opposition that the discrimination caused her to develop anxiety and

depression which prevented her from teaching summer school and losing income. (*Id.* at 13.)

     Here, Plaintiff has not alleged facts plausibly suggesting that the alleged discriminatory

incidents were severe or pervasive enough to rise to the level of a hostile work environment. *See*

*Yan*, 2016 WL 1276456, at *6 (finding that allegations that co-workers commented on plaintiff's

foreign accent and inability to communicate with customers were "insufficient to show a

workplace permeated with discriminatory intimidation, ridicule, and insult . . .") (quoting

*Littlejohn*, 795 F.3d at 320-21; *Murray v. Dutchess Cnty. Exec. Branch*, No. 17-CV-9121

(KMK), 2019 WL 4688602, at *12 (S.D.N.Y. Sep. 25, 2019) (dismissing hostile work

environment claim where plaintiff alleged that his director told him to expect resistance from co-

workers because of his color, was isolated by his supervisor, his planned training session was

canceled, a co-worker yelled rudely at him, white employees were favored for overtime

opportunities and promotions, and his complaints were ignored, but did not allege facts plausibly suggesting Defendant used racially derogatory language or acted in an overtly racially discriminatory way); *Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*, 16 CV 1101 (RRM) (CLP), 2018 WL 4055278, at *12 (E.D.N.Y. July 6, 2018) ("five extremely unpleasant interactions, and several weeks of uncertainty regarding whether . . . sick leave actually had been approved" does not support finding a hostile work environment severe or pervasive enough to alter conditions of employment); *Richard v. N.Y.C. Dept. of Educ.*, 16-CV-957 (MKB), 2017 WL 1232498, at *14-15 (E.D.N.Y. Mar. 31, 2017) (holding that comments regarding plaintiff's accent and an isolated comment referring to another black employee were not sufficient to state a hostile work environment claim, even when considered in the aggregate with other alleged acts such as getting publicly yelled at, exclusion from staff meetings, placement on probation, and denial of promotions); *see also Kho v. N.Y. and Presbyterian Hosp.*, 344 F. Supp. 3d 705, 722-23 (S.D.N.Y. Sep. 30, 2018) (noting significance of fact that comments about plaintiff's accent were not made in the presence of co-workers or in any other manner intended to humiliate plaintiff).

Moreover, all of the alleged remarks were made by students or non-supervisory colleagues, for which OCFS cannot be held liable. *See Lessambo v. PricewaterhouseCoopers, L.P.*, 2010 WL 3958787, at *10 (S.D.N.Y. Sep. 27, 2010) (holding that "[c]omments by plaintiff's non-supervisory colleagues . . . are not properly considered because employers are not . . . vicariously liable for [a] hostile work environment created by a mere co-worker of the victim.") (alteration in original) (internal quotation marks and citation omitted), *aff'd*, 451 F. App'x. 57 (2d Cir. 2011) (summary order). Further, Plaintiff acknowledges that after she spoke with Ginter about her students' remarks, Ginter told Plaintiff she would speak with Surgeary report the complaint, and gave Plaintiff contact information for the investigator. (DE 24 ¶¶ 47,

54.)  Thus, Plaintiff has not adequately pled that her employer failed to take remedial action or provide an avenue for a complaint, which is necessary to impute an alleged hostile work environment claim to the employer.  *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 92 (2d Cir. 2019) (finding that "a plaintiff must adduce evidence that the employer failed to provide a reasonable avenue for a complaint, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action," in order to find employer liable for hostile work environment created by a co-worker) (internal quotation marks and citation omitted)).

Accordingly, the undersigned respectfully recommends that Plaintiff's hostile work environment claims under Title VII be dismissed.

### E.  Whether Plaintiff Plausibly Alleges a Hostile Work Environment Claim against the Individual Defendants Under NYSHRL[10]

"Traditionally, claims for hostile work environment brought under Title VII and the NYSHRL have been governed by the same standard."  *Tortorici v. Bus-Tev, LLC*, 17-cv-7507 (PAC) (KHP), 2021 WL 4177209, at *12 (S.D.N.Y. Sep. 14, 2021), *adopting report and recommendation*, (internal quotation marks and citation omitted).  The NYSHRL was amended in August of 2019, to eliminate the "severe and pervasive"' standard, and "the new standard requires a plaintiff to show that [they] were subjected to inferior terms, conditions, or privileges of employment because of the individual's membership in one or more protected categories."  *Id.* (citing N.Y. Exec. Law § 300); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020).  Courts have interpreted the effective date of the amendment as October 11, 2019 and have not held the amendment to be retroactive.  *McHenry*, 510 F. Supp. 3d at 68.

---

[10] Although the undersigned recommends as noted above in § V.C. that the NYSHRL claims be dismissed as barred under the Eleventh Amendment, Defendants' additional arguments are addressed for purposes of this Report and Recommendation.

Defendants note that while some of Plaintiff's allegations fall within the timeframe covering the prior standard under the NYSHRL (mirroring Title VII), Plaintiff's allegations that accrued after the Amendment to the NYSHRL still fail, even under the lesser standard.  (DE 30 at 15.)  Plaintiff baldly argues that since she has proved her Title VII hostile work environment claim, she has also proven her NYSHRL claim under the lesser standard because the conduct continued after she complained.  (DE 32 at 13-14.)

Here, Plaintiff's NYSHR hostile environment claims based on the December 2018/January 2019 remarks by students are appropriately analyzed under the same standard as Title VII hostile work environment claims, and Plaintiff's claims based on the September 2019 comments about a Hispanic teacher's accent, the October/November 2019 comments about an Asian teacher's accent and teaching style, the June 26, 2020 unsatisfactory year-end evaluation, and Plaintiff's Career Finances and Management class being reassigned on August 10, 2020, are appropriately analyzed under the amended, less stringent standard.  Accordingly, the undersigned respectfully recommends that Plaintiff's NYSHRL claims based on acts up to the effective date of the amendment, October 11, 2019, be dismissed for the same reasons discussed above in Section V.D., and that the Court refrain from exercising jurisdiction over the NYSHRL claims based on acts taking place after October 11, 2019.  *See Halkitis v. N.Y.C. Dept. of Educ.*, 19-CV-11753 (JMF), 2022 WL 392911, at *7 (S.D.N.Y. Feb. 9, 2022) (dismissing portion of NYSHRL hostile work environment claims that allegedly occurred prior to the October 11, 2019 effective date of amendment because such claims also failed under Title VII hostile work environment analysis, and declining to exercise supplemental jurisdiction over claims that allegedly occurred after the date of amendment, because such claims are "best left to the courts of the State of New

York") (quoting *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x. 88, 93 (2d Cir. 2011)).[11]

### F.  Whether Plaintiff Sufficiently Pled a Retaliation Claim Under Title VII

Title VII of the Civil Rights Act of 1964 "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation."  *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e—3(a)).  Under this section of Title VII, referred to as the anti-retaliation provision, "discriminate against" has been interpreted to mean that an "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 57.  To make out a *prima facie* retaliation claim under Title VII, a plaintiff must demonstrate that "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).  "To prove the required causal link, [plaintiff] must establish that the employer's retaliatory motive was a but-for cause of the adverse action."  *Husser v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253, 271–72 (E.D.N.Y. 2015) (*adopting report and recommendation*) (internal quotation marks and citations omitted).

Defendants do not dispute that Plaintiff has adequately alleged the first two prongs of a Title VII retaliation claim, but argue that Plaintiff has failed to plead a materially adverse action, or a causal connection between the protected activity and any alleged adverse action.  (DE 30 at

---

[11] Although the Court in *Halkitis* held that the NYSHRL amendment's effective date was August 12, 2019, the effective date has been consistently noted as October 11, 2019.  *See McHenry*, *supra*; *Cherry v. N.Y.C. Hous. Auth.*, 564 F. Supp. 3d 140, 164 n.13 (E.D.N.Y. 2021) (citing *Wellner v. Montefiore Med. Ctr.*, 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019)).

21.)  The Court considers each disputed prong in turn.

     **i.**     **Materially Adverse Action**

To establish a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse" meaning the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68 (internal quotation marks and citation omitted).  Typically, "[p]etty slights, minor annoyances, and simple lack of good manners" do not constitute such adverse action.  *McWhite v. N.Y.C. Hous. Auth.*, No. 05 CV 0991(NG)(LB), 2008 WL 1699446, at *13 (E.D.N.Y. Apr. 10, 2008) (alternation in original) (citation omitted).  However, when analyzing whether an action is materially adverse, the alleged acts should be considered both separately and in the aggregate "as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Husser*, 137 F. Supp. 3d at 272 (internal quotation marks and citations omitted).

Defendants assert that the alleged unsatisfactory year end performance evaluation on June 26, 2020, rumors Ginter spread that Plaintiff would not be returning to teach at OCFS, and reassignment of Plaintiff's class to another teacher, do not rise to the level of a material adverse employment action.  (DE 30 at 22.)  Plaintiff argues that each of these actions was an act of retaliation as a result of her complaints to Ginter and the investigator, Martin.  (DE 32 at 15.) Plaintiff further argues that Title VII's antiretaliation provision is broader than the substantive discrimination provision because it is not limited to discriminatory actions that affect the terms and conditions of employment.  (*Id.* citing *Burlington N.*, 548 U.S. at 57).

Here, the Court finds that at this stage, Plaintiff has adequately pled that adverse action was taken against her in the context of a retaliation claim.  As Plaintiff notes, an adverse action

under a Title VII retaliation claim "is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination[,]' and covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII . . ." *Vega*, 801 F.3d at 90 (quoting *Burlington N.*, 548 U.S. at 57).  As discussed above in Section V.B., under the higher standard for analyzing the adverse action prong of substantive discrimination claims, Plaintiff adequately pled an adverse employment action as to the June 26, 2020 unsatisfactory year end evaluation by Ginter paired with the re-assignment of her Career Finances and Management on August 10, 2020.  Here though, even the alleged unsatisfactory evaluation, standing alone, is considered an adverse action for purposes of a retaliation claim. *Spaulding v. N.Y.C. Dept. of Educ.*, 2015 WL 12645530, at *43 (E.D.N.Y. Feb. 19, 2015), *report and recommendation adopted by* No. 12 Civ 3041 (KAM)(VMS) (E.D.N.Y. Sep. 21, 2015) (holding that a negative performance review, standing alone, was not an adverse action for a discrimination claim, but may be an adverse action for a retaliation claim) (collecting cases)). Additionally, the authority Defendants attempt to rely on is distinguishable.  In *Moy v. Perez*, the Court found that plaintiff's alleged negative evaluation was not an adverse action because it was still a positive evaluation, just not as positive as in years prior.  *Moy v. Perez*, 712 F. App'x 38, 40-41(2d Cir. 2017).  *Kelly v. Huntington Union Free Sch. Dist.* was decided at the summary judgment stage, and there the plaintiff's change in assignments was considered a lateral transfer as opposed to here, where Plaintiff's class was completely taken away by reassignment.  *See Kelly v. Huntington Union Free Sch. Dist.*, No. 09-CV-2101 (JFB)(ETB), 2012 WL 1077677 (E.D.N.Y. Mar. 30, 2012).

As for the alleged rumors, the Court finds that even under the lesser *Burlington* standard, rumors do not rise to the level of a materially adverse action that would dissuade

a reasonable worker from making a complaint. *See Spector v. Bd. of Tr. of Cmty. Tech Coll.*, 316 Fed. App'x. 18, 20-21 (2d Cr. 2009) (summary order) (finding that alleged threats of disciplinary action, rumors, accusations of misconduct, disputes over management of student organizations, and reminders about mental health counseling, could not "be regarded as a materially adverse action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination"). Thus, the Court finds that Plaintiff has adequately pled she suffered an adverse action in the context of a hostile work environment claim under Title VII.

### ii.    Causal Connection

"Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan v. City of N.Y.,* 888 F.3d 612, 625 (2d Cir. 2018). Plaintiff alleges the following protected activities: (1) asking Surgeary to stop discriminating against her in December 2018 and December 2019; (2) complaining to Ginter about Surgeary's comments in February 2019, and (3) filing a GOER complaint in mid-May of 2020. (DE 24 ¶ 60.) Plaintiff does not plead or argue direct evidence of retaliatory animus, but argues that she has established a causal connection between the alleged discriminatory acts and the protected activities because each of the retaliatory acts happened after she began to complain. (DE 32 at 17.) Defendants argue that the temporal proximity is not close enough to be considered causally connected. (DE 30 at 24.)

Here, the undersigned does not find a causal connection sufficiently alleged linking the 2018 and 2019 complaints to the alleged adverse actions in June and August of 2020. *See Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) (collecting cases) (holding that "two-and-one-half years is far too long to warrant an inference of discriminatory retaliation.");

*Green v. N.Y.C. Transit Auth.*, 15-CV-8204 (ALC), 2020 WL 5632743, at *12 (S.D.N.Y. Sep. 21, 2020) (no causal connection for alleged action that occurred years after the protected action took place); *Chang v. Safe Horizons*, 254 Fed. App'x. 838, 839 (2d Cir. 2007) (Summary Order) (finding that termination occurring almost one year after complaint of discrimination undermined any causal nexus based on temporal proximity).

However, the Court finds that Plaintiff has sufficiently plead a casual connection between filing the GOER complaint in mid-May of 2020 and receiving the unsatisfactory year-end evaluation on June 26, 2020, as well as the re-assignment of her Career Finances and Management on August 10, 2020, albeit just barely. *See Diaz*, 2022 WL 2803259, at *9 ("Although there is no bright-line rule, 'a period of greater than three months is too attenuated to provide a basis to infer retaliation'") (quoting *Sealy v. State Univ. of N.Y. at Stony Brook*, 834 F. App'x. 611, 614 (2d Cir. 2020)); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation . . . six months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation") (internal citation and citation omitted).

Accordingly, the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's Title VII retaliation claim be granted as to any retaliation based on the 2018 and 2019 complaints, but be denied as to Plaintiff's retaliation claims based on the filing of the GOER complaint in May of 2020 and the alleged resulting adverse actions taken against her in June and August of 2020.

## G. Whether Plaintiff Plausibly Alleged that the Individual Defendants Retaliated Against Her

Plaintiff does not acknowledge Defendants' arguments that she has failed to plausibly

30

allege retaliation claims under NYSHRL.  For the reasons discussed above in Section V.C., the undersigned respectfully recommends that Plaintiff's NYSHRL claims for retaliation by the individual Defendants be dismissed.[12]

### H.  Whether Plaintiff States a Plausible Claim for Constructive Discharge Under Title VII[13]

Constructive discharge occurs when an employer "intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily . . .  [due to] [w]orking conditions that are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).  "[C]onstructive discharge also requires deliberate action on the part of the employer." *Id.* at 74.

Defendants argue that Surgeary's comments, the unsatisfactory evaluation, and her class being reassigned, are not a basis for a constructive discharge claim.  (DE 30 at 28.)  Plaintiff argues that she was subjected to constant discriminatory remarks, was provided no remedy after complaining, and was then retaliated against.  (DE 32 at 18.)  Plaintiff further argues that Defendants' actions caused her to stuffer from anxiety and depression resulting in her FMLA leave, and ultimate inability to return to work.  (*Id.*)

Because Plaintiff has not adequately pled a hostile work environment claim, the undersigned respectfully recommends that any purported constructive discharge claim be dismissed. *See Ingrassia v. Health & Hostp. Corp.*, 130 F. Supp. 3d 709, 725 (E.D.N.Y. 2015)

---

[12] The Court acknowledges that unlike in Section V.C., here certain of Plaintiff's Title VII claims are recommended to survive the motion to dismiss.  However, based on the Eleventh Amendment immunity analysis discussed in Section V.C., the individual Defendants cannot be liable, as OCFS is immune from suit in federal Court on the NYSHRL claims.

[13] As noted by Defendants (DE 30 at 28), Plaintiff did not separately plead constructive discharge as a standalone cause of action.

(finding that a hostile work environment claim provides the "necessary predicate" to [a] constructive discharge claim) (quoting *Penn. State. Police v. Suders*, 542 U.S. 129, 149 (2004)) ("Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case."); *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 419 (July 11, 2013) ("[T]o the extent that the Amended Complaint can be read to assert a claim for constructive discharge, the allegations contained therein are insufficient to state such a claim because the Plaintiff has not sufficiently pleaded an intolerable work place.") (citation omitted)).

Accordingly, the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's constructive discharge claim be granted.

## VI.    Whether Plaintiff's Requests for Injunctive Relief and Punitive Damages Should be Dismissed

Defendants argue that Plaintiff's Request for injunctive relief under the NYSHRL should be dismissed because "federal courts may not grant declaratory or injunctive relief against a state agency based on violations of state law." (DE 30 at 28-29) (quoting *Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.*, 134 F.3d 87, 93 (2d Cir. 1998). Defendants further assert that injunctive relief against a state official may be recovered only in an official capacity suit, and Plaintiff is barred from bringing such a claim under the NYSRL because the Eleventh Amendment (as discussed above in Section V.C.) only permits a plaintiff to sue a state official in his official capacity for injunctive relief as to state claims. (DE 30 at 29.) (citing among others *Ross v. N.Y.*, No. 15-CV-3286 (JPO), 2016 WL 626561, at *4 (S.D.N.Y. Feb. 16, 2016). Plaintiff does not oppose Defendants' arguments. The undersigned finds Defendants' arguments on point, and therefore respectfully recommends that Plaintiff's claims for injunctive relief be dismissed.

Defendants further argue, again without opposition, that punitive damages are not permitted under the NYSHRL. (DE 30 at 29.) The Court agrees. *See Hauff v. State Univ. of*

32

*N.Y.*, 425 F. Supp. 3d 116, 138 (E.D.N.Y. 2019).  Further, punitive damages "may not be awarded in private suits brought under Title VII of the Civil Rights Act."[14]  *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).  Thus, the undersigned respectfully recommends that Plaintiff's claim for punitive damages also be dismissed.

## VII.    CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that: (1) Defendants' motion to dismiss Plaintiff's Title VII discrimination and retaliation claims that pre-date September 5, 2019 be granted as time-barred; (2) Defendants' motion to dismiss Plaintiff's Title VII discrimination claims be granted; (3) Defendants' motion to dismiss Plaintiff's NYSHRL discrimination claims be granted; (4) Defendants' motion to dismiss Plaintiff's Title VII hostile work environment claims be granted; (5) in the instance that the NYSHRL claims are not dismissed as barred by the Eleventh Amendment, that Defendants' motion to dismiss Plaintiff's NYSHRL hostile work environment claims be granted as to any claims pre-dating October 11, 2019, and that the Court decline exercising supplemental jurisdiction as to the remaining NYSHRL hostile work environment claims arising out of alleged actions that took place after October 11, 2019; (6) Defendants' motion to dismiss Plaintiff's Title VII retaliation claims and NYHRL retaliation claims (in the instance that the NYSHRL claims are not dismissed as barred by the Eleventh Amendment) be granted as to any retaliation based on the 2018 and 2019 complaints, but be denied as to Plaintiff's retaliation claims based on the filing of the GOER complaint in May of 2020 and alleged adverse actions taken in June/August of 2020; (7) Defendants' motion to dismiss Plaintiff's constructive discharge claim pursuant to Title VII be

---

[14] Defendants do not address punitive damages under the Title VII claim.  However, a Court may strike "prayers for punitive damages where such relief is unavailable as a matter of law."  *Doe v. Indyke*, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020) (collecting cases).

granted; (8) Defendants' motion to dismiss Plaintiff's request for injunctive relief and punitive damages for NYSHRL violations, to the extent any such claims survive, be granted; and (9) that Plaintiff's request for punitive damages under Title VII be dismissed.

The undersigned further notes that under Fed. R. Civ. P. 15(a)(2), leave to amend should be given freely "when justice so requires," including leave to amend *sua sponte* when the court dismisses most of a party's claims on the basis of an inadequate pleading. *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020). However, Plaintiff has already been granted leave to amend the Complaint (Electronic Order dated Aug. 3, 2021) and has not requested further leave to amend. Because the deficiencies in the Amended Complaint are substantive, the undersigned declines to recommend that the Court *sua sponte* grant leave to amend. *See Chudnovsky v. Leviton Mfg. Co., Inc.*, 158 Fed. App'x. 312, 314 (2d Cir. 20005) (denying leave to amend where plaintiff already had one opportunity to amend his complaint and "granting leave to amend would be unproductive or futile . . . [because plaintiff] did not indicate that he could allege additional facts that would cure the deficiencies in his already-amended complaint); *Cotiere v. Seabrook*, No. 14-CV-0487 (RRM)(LB), 2014 WL 3014912, at *1 (E.D.N.Y. July 3, 2014) (holding that leave to amend had already been granted and "because the deficits in the amended complaint [were] substantive rather than structural, another attempt would be futile.").

## VIII.   OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for each of the parties. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the

expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision") (citation omitted); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
           July 29, 2022

                                   **Respectfully submitted,**

                                   /S/ *James M. Wicks*
                                      JAMES M. WICKS
                                   United States Magistrate Judge